1   RACHELE BERGLUND (California Bar No. 248614)
    HERR PEDERSEN & BERGLUND LLP
2   100 Willow Plaza, Suite 300
    Visalia, California 93291
3   Telephone: (559) 636-0200
    Facsimile: (559) 636-9759
4   Email: rberglund@hpblaw.net

5   RONALD S. CONNELLY (DC Bar No. 488298)
    Applying pro hac vice
6   POWERS PYLES SUTTER & VERVILLE, PC
    1501 M Street, NW, 7th Floor
7   Washington, DC 20005
    Telephone: (202) 872-6762
8   Facsimile: (202) 785-1756
    Email: Ron.Connelly@PowersLaw.com

9
    Attorneys for Plaintiff,
10      KAWEAH DELTA HEALTH CARE DISTRICT

11

12              **UNITED STATES DISTRICT COURT**

13      **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

14

| | |
|---|---|
| 15   KAWEAH DELTA HEALTH CARE<br>DISTRICT, | Case No.: |
| 16                    Plaintiff, | **COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF AND<br>FOR SUMS DUE UNDER THE<br>MEDICARE ACT** |
| 17        v. | |
| 18   XAVIER BECERRA, Secretary of the<br>United States Department of Health and<br>Human Services, in his official capacity, | **1. VIOLATION OF THE MEDICARE<br>   STATUTE AT 42 U.S.C. §<br>   1395WW(D)(5)(F)(VI)** |
| 19 | |
| 20 | |
| 21                    Defendant. | **2. VIOLATION OF APA<br>   RULEMAKING PROCEDURES<br>   UNDER 5 U.S.C. § 553** |
| 22 | **3. VIOLATION OF MEDICARE<br>   RULEMAKING PROCEDURES<br>   UNDER 42 U.S.C. § 1395HH** |
| 23 | |
| 24 | **4. ARBITRARY AND CAPRICIOUS<br>   AGENCY ACTION** |
| 25 | |

26

27   ///

28   ///

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT**

1    Plaintiff, Kaweah Delta Health Care District ("Plaintiff"), by and through its
2    undersigned counsel, brings this action against Xavier Becerra, Secretary of the
3    United States Department of Health and Human Services (the "Defendant" or
4    "Secretary"), and alleges as follows:

5                                    **INTRODUCTION**

6    1.      This is a civil action brought to obtain judicial review of a final adverse
7    agency decision rendered by Defendant regarding the Medicare reimbursement owed
8    to Plaintiff.  Specifically, Plaintiff challenges Defendant's determination of Plaintiff's
9    operating and capital disproportionate share hospital ("DSH") reimbursement
10   payments for Plaintiff's fiscal year 2013 ("FY 2013"), which began on July 1, 2012
11   and ended on June 30, 2013.  Plaintiff challenges Defendant's unlawful exclusion of
12   Medicare Part A "exhausted days" from the numerator of the Medicaid percentage
13   and inclusion of Medicare Part A "exhausted days" in the Medicare/Supplemental
14   Security Income ("SSI") percentage when calculating Plaintiff's FY 2013 Medicare
15   DSH payments.

16   2.      At all relevant times, Plaintiff was a local health care district organized
17   under the California Health and Safety Code section 32000 *et seq.*, operating an
18   acute care hospital that participated in the Medicare program and qualified for
19   Medicare payments as a DSH because it treated a disproportionate share of low-
20   income patients.  The amount of the Medicare DSH payment due to a hospital is
21   determined, in part, by its "disproportionate patient percentage," which is defined as
22   the sum of two percentages—the hospital's Medicare/SSI percentage and its
23   Medicaid percentage.  42 U.S.C. § 1395ww(d)(5)(F)(vi); 42 C.F.R. § 412.106(b).  In
24   calculating each of these percentages, Defendant must consider whether the
25   Medicare beneficiary is "entitled" to benefits under Medicare Part A.

26   3.      Medicare Part A will cover up to 90 days of inpatient hospital services
27   per spell of illness plus an additional lifetime reserve of 60 days that the Medicare
28   beneficiary may choose to apply to any spell of illness in the benefit period.  42 U.S.C.

§ 1395d(a)(1); 42 C.F.R. § 409.61(a).  Medicare Part A will not pay for any days that exceed these covered days during an inpatient stay.  Days that exceed the statutory coverage limit are referred to as "exhausted days."

4.      During Plaintiff's FY 2013 cost reporting period, it served patients who were dually eligible for Medicare and Medicaid ("dual eligible patients").  For some dual eligible patients, Medicare did not pay for some or all of the patients' days because the patients had exhausted their Medicare Part A benefits.

5.      In calculating Plaintiff's FY 2013 Medicare DSH payments, Defendant unlawfully applied the regulation at 42 C.F.R. § 412.106(b)(2)(i) and Ruling CMS-1498-R by excluding exhausted days for dual eligible patients from the numerator of the Medicaid percentage and including exhausted days in both the numerator and denominator of the Medicare/SSI percentage.  Defendant's incorrect calculation of Medicare DSH payment resulted in a significant reduction in Plaintiff's FY 2013 Medicare reimbursements.

6.      Defendant's improper application of the regulation at 42 C.F.R. § 412.106(b)(2)(i) and Ruling CMS-1498-R is substantively and procedurally invalid under the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, and the Medicare statute, 42 U.S.C. §§ 1395ww(d)(5)(F)(vi), 1395hh.

7.      Plaintiff, therefore, respectfully requests that this Court set aside Defendant's regulation at 42 C.F.R. § 412.106(b)(2)(i) and CMS Ruling 1498-R that reduced Plaintiff's FY 2013 DSH payments by excluding Medicare Part A exhausted days for dual-eligible patients from the Medicaid percentage and including Medicare Part A exhausted days in the numerator and denominator of the Medicare/SSI percentage.  Plaintiff seeks an order from this Court to direct Defendant to include inpatient days attributable to dual-eligible patients who have exhausted their Medicare Part A benefits in the numerator of the Medicaid percentage of the DSH calculation, exclude Medicare Part A exhausted days from the numerator and denominator of the Medicare/SSI percentage of the DSH calculation, recalculate

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT**

1  Plaintiff's FY 2013 Medicare DSH payments, and make additional payments due to
2  Plaintiff in accordance with 42 U.S.C. § 1395oo(f)(2).

## JURISDICTION AND VENUE

8.  This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, which establishes the Medicare program, and the APA, 5 U.S.C. § 551 *et seq.*

9.  This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), which grants Medicare providers the right to obtain expedited judicial review ("EJR") of any action involving "a question of law or regulations relevant to the matters in controversy" when Defendant's Provider Reimbursement Review Board ("Board") "determines ... that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received." The Board granted EJR to Plaintiff by letter dated July 28, 202. Thus, this action is timely filed within the 60-day limitation period at 42 U.S.C. § 1395oo(f)(1). Plaintiff has exhausted all administrative remedies prior to commencing this action.

10. Venue in this Court is proper under 42 U.S.C. § 1395oo(f)(1) because Plaintiff is located in the Fresno Division of the Eastern District of California.

## PARTIES

11. Plaintiff is a local health care district, organized under the California Health and Safety Code section 32000 *et seq.*, that operates Kaweah Health Medical Center, an acute care hospital located in Visalia, California. Plaintiff participates in the Medicare program and has been assigned Medicare Provider Number 05-0057. At all times relevant to this action, Plaintiff qualified for payments as a disproportionate share hospital that treats a disproportionate share of low-income patients. During FY 2013, Plaintiff treated patients who were dually eligible for Medicare and Medicaid, but Medicare did not pay for some or all of the patients' days because the patients had exhausted their Medicare Part A benefits. Plaintiff contests

1   the Medicare DSH reimbursement decision for FY 2013.

2       12.    Defendant is the Secretary of the United States Department of Health

3   and Human Services and is the federal officer responsible for administering the

4   Medicare and Medicaid programs pursuant to the Social Security Act.  Defendant is

5   sued in his official capacity.    Defendant has delegated responsibility for

6   administering the Medicare program to the Centers for Medicare and Medicaid

7   Services ("CMS"), a federal agency within the United States Department of Health

8   and Human Services. References to "Defendant" or "Secretary" herein are meant to

9   refer to Secretary Becerra, his subordinates, his official predecessors or successors,

10   and the United States Department of Health and Human Services and its

11   components that he oversees, as the context requires.

12   **LEGAL BACKGROUND**

13       **A.**    **THE MEDICARE PROGRAM AND DSH PAYMENTS**

14       13.    The Medicare program, established at Title XVIII of the Social Security

15   Act, is a public health insurance program that furnishes health benefits to

16   individuals who are at least 65 years old, have a qualifying disability, or suffer from

17   end-stage renal disease.  42 U.S.C. § 1395c; *see generally id*. §§ 1395–1395iii.

18       14.    An Medicare beneficiary is entitled to have payment made by Medicare

19   on his or her behalf for, inter alia, inpatient and outpatient hospital services provided

20   by a hospital participating in the Medicare program as a provider of health care

21   services subject to certain parameters.  *Id*.

22       15.    The Medicare program consists of four Parts:  A, B, C, and D. This

23   action concerns Medicare Part A, which pays for inpatient hospital services.  *Id*. §

24   1395d(a).

25       16.    The Medicare program pays hospitals based on prospectively-

26   determined rates for each patient discharge.  *Id*. § 1395ww(d).  This methodology is

27   known as the inpatient prospective payment system ("IPPS").

28   ///

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT**

17.     An IPPS hospital that serves a disproportionate share of low-income patients is entitled to an upward adjustment to the Medicare IPPS payment, known as the Medicare DSH payment.  *Id.* § 1395ww(d)(5)(F)(i)(I); 42 C.F.R. § 412.106.

18.     Whether a hospital qualifies as a DSH and the amount of the Medicare DSH payment are based upon a hospital's "disproportionate patient percentage" ("DSH patient percentage"), which is a proxy for the hospital's utilization by low-income patients.  42 U.S.C. § 1395ww(d)(5)(F)(v)-(xiii); 42 C.F.R. § 412.106(d).  The DSH patient percentage is defined as the sum of two percentages: the hospital's Medicare/SSI percentage and its Medicaid percentage.  42 U.S.C. § 1395ww(d)(5)(F)(vi).

19.     The Medicare/SSI percentage consists of "the number of such hospital's patient days for such period which were made up of patients who (for such days) were *entitled to benefits under part A of [Medicare]* and were entitled to supplementary security income benefits (excluding any State supplementation)" divided by "the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under part A of [Medicare]*."  *Id.* § 1395ww(d)(5)(F)(vi)(I) (emphasis added).  Defendant computes the Medicare/SSI percentage annually and uses the percentage to calculate the hospital's DSH payment adjustment.  42 C.F.R. § 412.106(b)(2)-(3).

20.     The Medicaid percentage consists of "the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under [Medicaid], but who were *not entitled to benefits under part A of [Medicare]*" divided by "the total number of the hospital's patient days for such period."  42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).

21.     The interpretation of the Medicare/SSI and Medicaid percentages "is tied because a patient is either 'entitled' or 'not entitled' to Part A benefits and thus necessarily falls in one fraction or the other."  *Allina Health Servs. v. Sebelius*, 904

1  F. Supp. 2d 75, 88 (D.D.C. 2012), *aff'd in part, rev'd in part*, 746 F.3d 1102 (D.C.

2  Cir. 2014) (citing *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 5 (D.C. Cir. 2011)).

3  Accordingly, in calculating both of these percentages, Defendant must consider

4  whether the beneficiary is entitled to benefits under Medicare Part A.

5       22.     Medicare regulations also provide for an additional payment for capital

6  costs for urban hospitals with 100 or more beds that serve low-income patients.  42

7  C.F.R. § 412.320(a)(1).  The formula to determine the amount of the hospital's

8  additional capital payment includes the hospital's DSH patient percentage.  42

9  C.F.R. § 412.230(b).

10       23.     Under Medicare Part A, Medicare will reimburse, or "cover", up to 90

11  days of inpatient hospital services per spell of illness plus an additional lifetime

12  reserve of 60 days that the beneficiary may choose to apply to any spell of illness in

13  the benefit period.  42 U.S.C. § 1395d(a)(1); 42 C.F.R. § 409.61(a).  Medicare will not

14  pay for exhausted days—days that exceed these covered days during an inpatient

15  stay.

16       24.     Defendant promulgated regulations at 42 C.F.R. § 412.106(b)(2)

17  governing how exhausted days are counted in the Medicare DSH calculation.

18       25.     Prior to October 1, 2004, this regulation included inpatient days in the

19  numerator of the Medicare/SSI percentage only if the days were "covered" under

20  Medicare Part A:

21       (b) Determination of a hospital's disproportionate patient percentage...

22       (2) First computation: Federal fiscal year. For each month of the

23       Federal fiscal year in which the hospital's cost reporting period begins,

24       CMS—

25          (i) Determines the number of *covered* patient days that—

26             (A) Are associated with discharges occurring during each

27             month; and

28             (B) Are furnished to patients who during that month

1                                     were entitled to both Medicare Part A and SSI, excluding

2                                     those patients who received only State supplementation;

3                          (ii) Adds the results for the whole period; and

4                          (iii) Divides the number determined under paragraph (b)(2)(ii) of

5                          this section by the total number of patient days that—

6                                       (A) Are associated with discharges that occur during that

7                                       period; and

8                                       (B) Are furnished to patients entitled to Medicare Part A.

9  42 C.F.R. § 412.106(b)(2) (2003) (emphasis added).

10        26.     On May 19, 2003, Defendant published a proposed rule ("2004 IPPS

11 Proposed Rule") inaccurately stating that the Secretary's current policy was to

12 include all dual-eligible days in the Medicare/SSI percentage, even if the days were

13 not paid by Medicare. Medicare Program; Proposed Changes to the Hospital

14 Inpatient Prospective Payment Systems and Fiscal Year 2004 Rates, 68 Fed. Reg.

15 27,154, 27,207-08 (May 19, 2003) ("[O]ur current policy regarding dual-eligible

16 patient days is that they are counted in the Medicare fraction and excluded from the

17 Medicaid fraction, even if the patient's Medicare Part A coverage has been

18 exhausted."). The Secretary proposed to count these days in the Medicaid

19 percentage of the Medicare DSH payment calculation. *Id.* ("We are proposing to

20 change our policy, to begin to count in the Medicaid fraction of the DSH patient

21 percentage the patient days of dual-eligible Medicare beneficiaries whose Medicare

22 coverage has expired").

23        27.     Defendant did not finalize this proposal. Medicare Program; Changes

24 to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2004 Rates,

25 68 Fed. Reg. 45,346, 45,421 (Aug. 1, 2003) ("Due to the number and nature of the

26 comments we received on our proposed policies, we are addressing the public

27 comments in a separate document.").

28 ///

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT**

28.     In a proposed rule published on May 18, 2004 to implement IPPS for 2005 ("2005 IPPS Proposed Rule"), the Secretary stated that the agency would address the comments it received in a forthcoming rule.   Medicare Program; Proposed Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2005 Rates, 69 Fed. Reg. 28,196, 28,286 (May 18, 2004).

29.     Three days before the comment period closed for the 2005 IPPS Proposed Rule, the Secretary posted a notice on CMS's website acknowledging that he inaccurately articulated the agency's policy concerning the treatment of inpatient days for dual-eligible patients who exhausted their Medicare Part A benefits. Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2005 Rates, 69 Fed. Reg. 48,915, 49,098 (Aug. 11, 2004); *see also Empire Health Found. for Valley Hosp. Med. Ctr. v. Price*, 334 F. Supp. 3d 1134, 1157 (E.D. Wash. 2018), *aff'd on other grounds sub nom. Empire Health Found. for Valley Hosp. Med. Ctr. v. Azar*, 958 F.3d 873 (9th Cir. 2020).

30.     On August 11, 2004, Defendant published a final rule ("2005 IPPS Final Rule") recognizing that he misstated in the 2004 IPPS Proposed Rule the then current policy regarding the treatment of inpatient days for dual-eligible patients who exhausted their Medicare Part A coverage.   Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2005 Rates, 69 Fed. Reg. 48,915, 49,098 (Aug. 11, 2004).   Defendant acknowledged that the "policy has been that only covered patient days are included in the Medicare fraction." *Id.*

31.     In the 2005 IPPS Final Rule, Defendant declined to adopt his proposal to include dual-eligible patients who have exhausted their Medicare Part A coverage in the Medicaid percentage.   *Id.* at 49,099.   Instead, Defendant established a new policy to "include the days associated with dual-eligible beneficiaries in the Medicare fraction, whether or not the beneficiary has exhausted Medicare Part A hospital coverage," effective for discharges occurring on or after October 1, 2004.   *Id.*   The Secretary accomplished this by removing the term "covered" from the regulation at

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT**

42 C.F.R. § 412.106(b)(2)(i) governing the computation of the Medicare/SSI percentage of the DSH payment calculation. *Id.*

32.     Accordingly, during Plaintiff's FY 2013, the regulation at 42 C.F.R. § 412.106(b)(2) required the Medicare/SSI percentage to be calculated as follows:

(b) Determination of a hospital's disproportionate patient percentage...

(2) First computation: Federal fiscal year. For each month of the Federal fiscal year in which the hospital's cost reporting period begins, CMS—

    (i) *Determines the number of patient days that—*

        (A) Are associated with discharges occurring during each month; and

        (B) Are furnished to patients who during that month were entitled to both Medicare Part A (including Medicare Advantage (Part C)) and SSI, excluding those patients who received only State supplementation;

    (ii) Adds the results for the whole period; and

    (iii) Divides the number determined under paragraph (b)(2)(ii) of this section by the total number of days that—

        (A) Are associated with discharges that occur during that period; and

        (B) Are furnished to patients entitled to Medicare Part A (including Medicare Advantage (Part C)).

42 C.F.R. § 412.106(b)(2) (2011-2012) (emphasis added).

33.     In 2010, the Secretary published Ruling CMS-1498-R pertaining to several Medicare DSH issues.   CMS, Ruling CMS-1948-R (Apr. 28, 2010), https://www.cms.gov/Regulations-and-Guidance/Guidance/Rulings/Downloads/CMS1498R.pdf   Ruling   CMS-1498-R reiterated the Secretary's policy of including exhausted Medicare Part A days in the

1   Medicare/SSI percentage of the Medicare DSH payment calculation and excluding

2   these days from the DSH Medicaid percentage for cost reports with discharges on or

3   after October 1, 2004.  Id. at 8-9.  The Secretary did not provide the public with an

4   opportunity to comment on the Ruling CMS-1498-R.

5       **B.    CONTROLLING PRECEDENT ON THE TREATMENT OF
            EXHAUSTED DAYS**

6

7       34.    In *Empire Health Foundation v. Price*, a hospital challenged the validity

8   of the 2005 IPPS Final Rule, which interpreted the phrase "entitled to benefits under

9   [Medicare Part A]" for purposes of calculating the DSH payment.   *Empire Health*

10  *Found.*, 334 F. Supp. 3d at 1141 (E.D. Wash. 2018), *aff'd on other grounds sub nom.*

11  *Empire Health Found. for Valley Hosp. Med. Ctr. v. Azar*, 958 F.3d 873 (9th Cir. 2020).

12  Although the United States District Court for the Eastern District of Washington held

13  that the Secretary's interpretation of the phrase "entitled to benefits under [Medicare

14  Part A]" in the 2005 IPPS Final Rule was not contrary to the Medicare statute, the

15  court concluded that the amendment of 42 C.F.R. § 412.106(b)(2) in the 2005 IPPS

16  Final Rule was "procedurally invalid under the APA because the Secretary's notice

17  and comment opportunity was inadequate and that the 2005 Final Rule was not a

18  logical outgrowth of the proposed rule."  *Id.* at 1144-53, 1161-62.  Therefore, the

19  court vacated the 2005 IPPS Final Rule's amendment of 42 C.F.R. § 412.106(b)(2).

20      35.    On appeal, the Ninth Circuit upheld the vacatur of the 2005 IPPS Final

21  Rule's amendment to 42 C.F.R. § 412.106(b)(2) but on different grounds.  *Empire*

22  *Health Foundation v. Azar*, 958 F.3d 873, 877-78 (9th Cir. 2020).  The Ninth Circuit

23  found that the 2005 IPPS Final Rule's satisfied the APA's notice-and-comment

24  requirements.  *Id.* at 882-84.  However, the Ninth Circuit held that the 2005 IPPS

25  Final Rule contravenes the Medicare statute, which includes in the DSH

26  Medicare/SSI percentage only days for which a patient is "entitled" to Medicare

27  payment.  *Id.* at 884-86.  The Ninth Circuit concluded that because patients are not

28  entitled to Medicare payment for days in which they have exhausted Part A benefits,

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT**

1  those days must be excluded from the Medicare fraction.  *Id.*  The Ninth Circuit's

2  decision is controlling in this action.

3      36.    Courts outside of the Ninth Circuit have upheld the Secretary's

4  interpretation in the 2005 IPPS Final Rule of the phrase "entitled to [Medicare]" in

5  the Medicare statute.  *See e.g.*, *Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718

6  F.3d 914 (D.C. Cir. 2013); *Metro Hosp. v. HHS*, 712 F.3d 248, 270 (6th Cir. 2013).

7  Those decisions are not binding on this Court.

8      37.    On July 2, 2021, the Supreme Court granted the Secretary's petition

9  for certiorari in *Empire Health Foundation*.  *Becerra v. Empire Health Found.*, No. 20-

10  1312, 2021 WL 2742788 (U.S. July 2, 2021).  *Empire Health Foundation* is currently

11  pending at the Supreme Court.

12      **C.    RULEMAKING UNDER THE APA**

13      38.    Under the APA, substantive rules must be published in the Federal

14  Register, and the public must be given an opportunity to comment upon their

15  content.  5 U.S.C. § 553(b)-(c).  After considering the comments it receives from the

16  public, the agency may publish its final rule.  *Id.* § 553(c)-(d).  These procedures are

17  commonly referred to as "notice-and-comment rulemaking."

18      39.    The APA defines the term "rule" as follows:

19      the whole or a part of an agency statement of general or particular

20      applicability and future effect designed to implement, interpret, or

21      prescribe law or policy or describing the organization, procedure, or

22      practice requirements of an agency and includes the approval or

23      prescription for the future of rates, wages, corporate or financial

24      structures or reorganizations thereof, prices, facilities, appliances,

25      services or allowances therefor or of valuations, costs, or accounting,

26      or practices bearing on any of the foregoing.

27  *Id.* § 551(4).

28  ///

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT**

1        40.    Interpretive rules, general statements of policy, and rules of agency

2   organization, procedure, or practice are exempt from the APA's notice-and-comment

3   requirements.  *Id.* § 553(b), (d)(2).

4        41.    The APA makes unlawful any agency action that is "without observance

5   of procedure required by law" or that is "arbitrary, capricious, an abuse of discretion,

6   or otherwise not in accordance with law."  *Id.* § 706(2)(A), (D).   Accordingly, a

7   substantive rule, or an amendment to the rule, promulgated without notice-and-

8   comment rulemaking is invalid.  *Id.*

9        42.    A final rule that departs from the agency's proposed rule is valid only

10  if "it is in character with the original proposal and a logical outgrowth of the notice

11  and comments."  *United Farm Workers v. United States Dep't of Lab.*, 509 F. Supp.

12  3d 1225, 1245 (E.D. Cal. 2020) (*quoting Envtl. Def. Ctr., Inc. v. E.P.A.*, 344 F.3d 832,

13  851 (9th Cir. 2003)).

14      **D.**     **RULEMAKING UNDER THE MEDICARE STATUTE**

15       43.    The Medicare statute also requires rules to be promulgated under

16  notice-and-comment procedures:

17          No rule, requirement, or other statement of policy (other than a

18          national coverage determination) that establishes or changes a

19          substantive legal standard governing the scope of benefits, the

20          payment for services, or the eligibility of individuals, entities, or

21          organizations to furnish or receive services or benefits under this

22          subchapter shall take effect unless it is promulgated by the Secretary

23          by regulation . . . .

24  42 U.S.C. § 1395hh(a)(2).

25       44.    With few exceptions, before issuing a rule, requirement, or other

26  statement of policy that changes a substantive legal standard governing the payment

27  for services, "the Secretary shall provide for notice of the proposed regulation in the

28  Federal Register and a period of not less than 60 days for public comment thereon."

1    *Id.* § 1395hh(b)(1).

2        45.    A final rule that is not a logical outgrowth of a proposed rule is subject

3    to further public comment:

4            If the Secretary publishes a final regulation that includes a provision

5            that is not a logical outgrowth of a previously published notice of

6            proposed rulemaking or interim final rule, such provision shall be

7            treated as a proposed regulation and shall not take effect until there

8            is the further opportunity for public comment and a publication of the

9            provision again as a final regulation.

10   *Id.* § 1395hh(a)(4).

11       46.    In *Azar v. Allina Health Services*, 139 S. Ct. 1804 (2019), the Supreme

12   Court held that rules establishing or changing a "substantive legal standard" that

13   impacts payment for services must be promulgated through to notice-and-comment

14   rulemaking.  The Court held that the rulemaking provisions of the Medicare statute

15   do not incorporate the APA's exemption from notice-and-comment rulemaking for

16   interpretative rules.  *Id.* at 1814.

17       **E.**     **MEDICARE COST REPORT AUDITS AND APPEALS**

18       47.    CMS has delegated many Medicare audit responsibilities to Medicare

19   Administrative Contractors ("MACs"), which are private companies under contract

20   with the Secretary to pay Medicare claims and audit hospital cost reports.  42 U.S.C

21   § 1395kk-1.  At the close of a hospital's fiscal year, it is required to submit to its

22   designated MAC a "cost report" showing both the costs incurred by the hospital

23   during the fiscal year and the appropriate share of these costs to be apportioned to

24   Medicare.  42 C.F.R. § 413.24(f).

25       48.    The MAC must analyze and audit the cost report and inform the

26   hospital of a final determination of the amount of Medicare reimbursement through

27   a Notice of Program Reimbursement ("NPR").  42 C.F.R. § 405.1803(a).  A hospital's

28   DSH payment is among the components of the final payment determination reported

1  in the NPR.

2      49.    A hospital may appeal the MAC's final determination of its Medicare

3  reimbursement to the Board, which is an administrative tribunal.   42 U.S.C. §

4  1395oo(a); 42 C.F.R. § 405.1835(a).  The Board has jurisdiction over such appeals

5  from MAC determinations if the following requirements are met:  (1) the hospital is

6  dissatisfied with the MAC's final determination; (2) the amount in controversy is at

7  least $10,000; and (3) the date of receipt by the Board of the hospital's hearing

8  request is no later than 180 days after the date of receipt by the hospital of the MAC's

9  final determination.  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835(a).

10      50.    The Board lacks the authority to decide the validity of a Medicare

11  regulation.  42 C.F.R. § 405.1867.  If a hospital appeals an issue that involves a

12  question that is beyond the Board's authority, the Board may authorize EJR of the

13  case.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842.

14      51.    The Board must grant EJR if it determines that (1) the Board does not

15  have the authority to decide the legal question because the question is a challenge

16  either to the constitutionality of a statute or to the substantive or procedural validity

17  of a regulation or CMS Ruling; and (2) the Board has jurisdiction to hold a hearing

18  on the specific matter at issue.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842(f)(1).

19      52.    If the Board grants EJR, the CMS Administrator has the right to "review

20  the Board's jurisdictional finding, but not the Board's authority determination."  42

21  C.F.R. § 405.1842(a)(3).  The Board's decision to grant EJR "becomes final and

22  binding on the parties unless the decision is reversed, affirmed, modified, or

23  remanded by the Administrator."  *Id.* § 405.1842(g)(1)(iii).

24      53.    If the Board grants EJR, the hospital may seek judicial review by

25  commencing a civil action within 60 days of the date on which notification of the

26  Board's determination is received.   42 U.S.C. § 1395oo(f)(l); 42 C.F.R. §

27  405.1842(g)(2).

28  ///

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT**

**FACTS SPECIFIC TO THIS CASE**

54.    Plaintiff operates Kaweah Health Medical Center, a general, acute care hospital located in Visalia, California.

55.    Plaintiff qualified for Medicare DSH payments in FY 2013.

56.    In FY 2013, Plaintiff treated patients who were dually eligible for Medicare and Medicaid, but Medicare did not pay for some or all of the patients' days because the patients had exhausted their Medicare Part A benefits.

57.    By letter dated January 19, 2015, Noridian Healthcare Solutions, Plaintiff's MAC, issued an NPR for Plaintiff's FY 2013.

58.    Plaintiff appealed the NPR on July 8, 2015, contesting Defendant's inclusion of exhausted Medicare Part A days in the Medicare/SSI percentage of the Medicare DSH calculation and exclusion of inpatient days attributable to dual-eligible patients who have exhausted their Medicare Part A benefits from the Medicaid percentage of the Medicare DSH calculation when determining Plaintiff's DSH payments for FY 2013.  Plaintiff filed the appeal with the Board within 180 days after the date of receipt of the NPR. The Board assigned Case No. 15-3002 to the appeal.

59.    By letter dated May 8, 2017, Noridian Healthcare Solutions issued a Revised NPR ("RNPR") for the same cost reporting period.

60.    By letter dated July 7, 2017, Plaintiff appealed the May 8, 2017 RNPR, challenging a different reimbursement issue not before this Court.

61.    On July 12, 2017, the Board consolidated Plaintiff's appeal of the RNPR into Case No. 15-3002, which was pending at the Board.  The total amount in controversy for the Case No. 15-3002 exceeded $10,000.

62.    On January 15, 2020, the Board requested comments from the Plaintiff and the MAC on whether the Board should grant EJR on the issue of Defendant's exclusion of exhausted Medicare Part A days for dual-eligible patients from the DSH Medicaid percentage and the inclusion of exhausted days in the Medicare/SSI

1  percentage.  Plaintiff and the MAC submitted comments on February 14, 2020, and
2  February 17, 2020, respectively.

3      63.    By letter dated July 28, 2021, the Board granted EJR on its own motion
4  for the DSH exhausted days issue in FY 2013.  The Board concluded that it had
5  jurisdiction over the matter for the subject year and lacked the authority to decide
6  the legal question of whether 42 C.F.R. § 412.106(b)(2)(i) is valid as it relates to the
7  Plaintiff's Medicare Part A exhausted days at issue.  A copy of this decision is
8  attached as Exhibit A.

9      64.    The Board's July 28, 2021 EJR decision was not reversed, affirmed,
10  modified, or remanded by the CMS Administrator.  Accordingly, the Board's July 28,
11  2021 EJR decision constitutes Defendant's final agency action in Case No. 15-3002
12  on the DSH dual-eligible exhausted days issue.

13      65.    By filing this Complaint, Plaintiff has timely sought review of this Court
14  under 42 U.S.C. § 1395oo(f)(1).

15                          **CAUSES OF ACTION**

16  **1.    FIRST CAUSE OF ACTION – VIOLATION OF THE MEDICARE
        STATUTE AT 42 U.S.C. § 1395WW(D)(5)(F)(VI)**
17

18      66.    Plaintiff realleges and incorporates by reference paragraphs 1-65 as if
19  set forth fully herein.

20      67.    The DSH patient percentage is defined as the sum of two percentages,
21  the hospital's Medicare/SSI percentage and its Medicaid percentage.  *Id.* §
22  1395ww(d)(5)(F)(vi).  The Medicare/SSI percentage consists of "the number of such
23  hospital's patient days for such period which were made up of patients who (for such
24  days) *were entitled to benefits under part A of [Medicare]* and were entitled to
25  supplementary security income benefits (excluding any State supplementation)"
26  divided by "the number of such hospital's patient days for such fiscal year which
27  were made up of patients who (for such days) *were entitled to benefits under part A
28  of [Medicare]."   Id.* § 1395ww(d)(5)(F)(vi)(I) (emphasis added).  The Medicaid

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT**

1  percentage consists of "the number of the hospital's patient days for such period

2  which consist of patients who (for such days) were eligible for medical assistance

3  under a State plan approved under [Medicaid], but who *were not entitled to benefits*

4  *under part A of [Medicare]*" divided by "the total number of the hospital's patient days

5  for such period." *Id.* § 1395ww(d)(5)(F)(vi)(II) (emphasis added).

6       68.    The phrase "entitled to [Medicare Part A]" in the statutory description

7  of the Medicare/SSI percentage unambiguously refers to the right to *payment* of

8  benefits under Medicare Part A.  *Empire Health Found., 958 F.3d at 885-86; Legacy*

9  *Emanuel Hosp. v. Shalala*, 97 F.3d 1261 (9th Cir. 1996). *But see Catholic Health*, 718

10  F.3d at 920.

11       69.    Accordingly, under the Ninth Circuit's controlling precedent, the term

12  "entitled" in the DSH statute includes only days for which Medicare paid for inpatient

13  hospital services.  *Empire Health Found.*, 958 F.3d at 885-86.  Because Medicare

14  Part A does not pay for exhausted days, those days may not be included in the

15  Medicare/SSI percentage for purposes of calculating the Medicare DSH payment.

16       70.    Thus, inpatient days attributable to dual-eligible patients who have

17  exhausted their Medicare Part A benefits must be included in the Medicaid

18  percentage when determining DSH payments for Plaintiff's FY 2013.  Exhausted

19  Medicare Part A days must be excluded from Medicare/SSI percentage when

20  determining Plaintiff's DSH payments for FY 2013.

21       71.    By promulgating the 2005 IPPS Final Rule and restating the rule in

22  Ruling CMS-1498-R, which included exhausted Medicare Part A days in the

23  Medicare/SSI percentage and excluding exhausted Medicare Part A days attributable

24  to dual-eligible patients from the Medicaid percentage in calculating DSH payments,

25  Defendant violated the Medicare statute.

26       72.    Therefore, Defendant's application of the regulation at 42 C.F.R. §

27  412.106(b)(2)(i), to exclude exhausted Medicare Part A dual-eligible days in the

28  Medicaid percentage and include exhausted days in the Medicare/SSI percentage

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT**

1   when calculating the Plaintiff's DSH payments for FY 2013, is contrary to the

2   Medicare statute at 42 U.S.C. § 1395ww(d)(5)(F)(vi).

3   **2.      SECOND CAUSE OF ACTION – VIOLATION OF APA RULEMAKING PROCEDURES UNDER 5 U.S.C. § 553**

4

5   73.    Plaintiff realleges and incorporates by reference paragraphs 1-72 as if

6   set forth fully herein.

7   74.    Under the APA, substantive rules must be published in the Federal

8   Register, and the public must be given an opportunity to comment upon their

9   content. *Id.* § 553(b)-(c). After considering the comments it receives from the public,

10  the agency may publish its final rule. *Id.* § 553(c)-(d). "[A] final regulation that varies

11  from the proposal, even substantially, will be valid as long as it is in character with

12  the original proposal and a logical outgrowth of the notice and comments." *United*

13  *Farm Workers*, 509 F. Supp. 3d at 1245 (*quoting Envtl. Def. Ctr., Inc.*, 344 F.3d at

14  851).

15  75.    Defendant impermissibly changed the substantive requirements of the

16  regulation at 42 C.F.R. § 412.106(b)(2)(i) in violation of the notice-and-comment

17  rulemaking procedures of the APA, 5 U.S.C. § 553(b)-(c).

18  76.    In the 2003 IPPS Proposed Rule, Defendant misstated his then-existing

19  policy regarding the treatment of Medicare exhausted days in the DSH payment

20  calculation.    Medicare Program; Proposed Changes to the Hospital Inpatient

21  Prospective Payment Systems and Fiscal Year 2004 Rates, 68 Fed. Reg. 27,154,

22  27,207-08 (May 19, 2003); *Empire Health Found.*, 334 F. Supp. 3d at 1134, 1161.

23  Defendant published an announcement on CMS's website—not the Federal

24  Register—acknowledging his misstatement in the 2003 IPPS Proposed Rule.

25  Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems

26  and Fiscal Year 2005 Rates, 69 Fed. Reg. 48,915, 49,098 (Aug. 11, 2004). This

27  announcement was issued approximately three days before the comment period

28  closed for the 2005 IPPS Proposed Rule. *Id.*

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT**

77.     Accordingly, Defendant failed to provide adequate notice and an opportunity for the public to comment on its proposal that was ultimately promulgated in the 2005 IPPS Final Rule, in violation of the procedural rulemaking requirements of the APA. *Empire Health Found.*, 334 F. Supp. 3d at 1162.

78.     The 2005 IPPS Final Rule was not a "logical outgrowth" of the 2003 IPPS Proposed Rule. "[I]nterested parties could not reasonably foresee the [2005 IPPS Final Rule] because of Defendant's misstatement about the agency's then-existing policy." *Empire Health Found.*, 334 F. Supp. 3d at 1162. Hence, interested parties were deprived of a meaningful opportunity to comment on Defendant's policy prior to its promulgation. *Id.*

79.     Ruling CMS-1498-R, which restates the Secretary's policy on the treatment of exhausted days for purposes of calculating DSH payments, is invalid because Ruling CMS-1498-R was not published in the Federal Register and interested parties were not afforded an opportunity to comment on the contents of the ruling.

80.     Therefore, Defendant should have included exhausted Medicare Part A dual-eligible days in the numerator of the Medicaid percentage and excluded exhausted days from Medicare/SSI percentage when calculating the Plaintiff's Medicare DSH payment for FY 2013.

**3.     THIRD CAUSE OF ACTION – VIOLATION OF MEDICARE RULEMAKING PROCEDURES UNDER 42 U.S.C. § 1395HH**

81.     Plaintiff realleges and incorporates by reference paragraphs 1-80 as if set forth fully herein.

82.     The Medicare statute explicitly requires certain rules, requirements, or statements of policy to be promulgated in accordance with the statute's notice-and-comment procedures. 42 U.S.C. § 1395hh(a)(2). Before issuing a rule, requirement, or other statement of policy that changes a substantive legal standard governing the payment for services, "the Secretary [Defendant] shall provide for notice of the

1    proposed regulation in the Federal Register and a period of not less than 60 days for

2    public comment thereon." *Id.* § 1395hh(b)(1).  Any final rule that is not a logical

3    outgrowth of a proposed rule may not take effect unless it is subject to additional

4    notice and comment.  *Id.* § 1395hh(a)(4).  The Medicare statute's notice-and-

5    comment rulemaking requirements do not incorporate the APA's exemption of

6    interpretive rules from notice-and-comment rulemaking requirements. *Allina Health*

7    *Services*, 139 S. Ct. at 1814.

8        83.   Defendant impermissibly changed the regulation at 42 C.F.R. §

9    412.106(b)(2)(i), which was restated in Ruling CMS-1498-R, in violation of the notice-

10   and-comment rulemaking procedures of the Medicare statute.  42 U.S.C. § 1395hh.

11       84.   Defendant's policy, established in the 2005 IPPS Final Rule and

12   restated in Ruling CMS-1498-R, excluding exhausted days from the Medicare/SSI

13   percentage and including exhausted Medicare Part A dual-eligible days in the

14   Medicaid percentage constitutes a rule, requirement, or other statement of policy

15   that changed a substantive legal standard for the payment for services.  42 U.S.C. §

16   1395hh(a)(2).

17       85.   In the 2003 IPPS Proposed Rule, Defendant's misstated his then-

18   existing policy regarding the treatment of Medicare exhausted days in the DSH

19   payment calculation.  Medicare Program; Proposed Changes to the Hospital Inpatient

20   Prospective Payment Systems and Fiscal Year 2004 Rates, 68 Fed. Reg. 27,154,

21   27,207-08 (May 19, 2003); *Empire Health Found.*, 334 F. Supp. 3d at 1134, 1161.

22   Defendant published an announcement on CMS's website—not the Federal

23   Register—acknowledging his misstatement in the 2003 IPPS Proposed Rule.

24   Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems

25   and Fiscal Year 2005 Rates, 69 Fed. Reg. 48,915, 49,098 (Aug. 11, 2004).  This

26   announcement was issued approximately three days before the comment period

27   closed for the 2005 IPPS Proposed Rule.  *Id.*

28   ///

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
**AND FOR SUMS DUE UNDER THE MEDICARE ACT**

86. Accordingly, Defendant failed to provide adequate notice and an opportunity for the public to comment on the proposal that was promulgated in the 2005 IPPS Final Rule, in violation of the procedural rulemaking requirements of the Medicare statute. 42 U.S.C. § 1395hh(a)(2), (b)(1).

87. The 2005 IPPS Final Rule was not a "logical outgrowth" of the 2003 IPPS Proposed Rule. *Id.* § 1395hh(a)(4). "[I]nterested parties could not reasonably foresee the [2005 IPPS Final Rule] because of Defendant's misstatement about the agency's then-existing policy." *Empire Health Found.*, 334 F. Supp. 3d at 1162. Hence, interested parties were deprived of a meaningful opportunity to comment on Defendant's policy prior to its promulgation.

88. Ruling CMS-1498-R, which restates Defendant's policy on the treatment of exhausted days for purposes of calculating DSH payments, is invalid because Ruling CMS-1498-R was not published in the Federal Register and interested parties were not afforded an opportunity to comment on the contents of the ruling.

89. When Defendant applied the rule in calculating Plaintiff's DSH payments for its FY 2013, the policy was not promulgated pursuant to notice-and-comment rulemaking procedures as required by the Medicare statute. 42 U.S.C. § 1395hh. Defendant's policy is, therefore, invalid and may not be applied to Plaintiff's FY 2013 DSH payment.

### 4. FOURTH CAUSE OF ACTION – ARBITRARY AND CAPRICIOUS AGENCY ACTION

90. Plaintiff realleges and incorporates by reference paragraphs 1-89 as if set forth fully herein

91. Defendant's 2005 IPPS Final Rule and Ruling CMS-1498-R including inpatient days attributable to dual-eligible patients who have exhausted their Medicare Part A benefits in the Medicare/SSI percentage and excluding exhausted days from the Medicaid percentage for purposes of calculating DSH payment violate

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR SUMS DUE UNDER THE MEDICARE ACT**

1   the Medicare statue and are, therefore, arbitrary, capricious, an abuse of discretion,

2   and otherwise contrary to law, in contravention of the APA.  5 U.S.C. § 706(2)(A); *see*

3   *Empire Health Found.*, 958 F.3d at 886.

4        92.    Defendant failed to comply with the notice-and-comment rulemaking

5   requirements under the APA and the Medicare statute when he promulgated the

6   2005 IPPS Final Rule and Ruling CMS-1498-R.  Therefore, the 2005 IPPS Final Rule

7   and Ruling CMS-1498-R are arbitrary, capricious, an abuse of discretion, without

8   observation of procedure required by law, or otherwise contrary to law.  5 U.S.C. §

9   706(2)(A), (D).

10                          **REQUEST FOR RELIEF**

11        **WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

12        1.    A declaration by this Court invalidating Defendant's inclusion of

13   inpatient days attributable to dual-eligible patients who have exhausted their

14   Medicare Part A benefits in the Medicare/SSI percentage and exclusion of Medicare

15   Part A dual eligible exhausted days from the Medicaid percentage in calculating DSH

16   payments;

17        2.    A declaration by this Court that inpatient days attributable to dual-

18   eligible patients who have exhausted their Medicare Part A benefits must be excluded

19   from the Medicare/SSI percentage and included in the Medicaid percentage when

20   determining DSH payments;

21        3.    An order from this Court enjoining Defendant from including inpatient

22   days attributable to dual-eligible patients who have exhausted their Medicare Part A

23   benefits in the Medicare/SSI percentage and excluding Medicare Part A exhausted

24   days from the Medicaid percentage when determining Plaintiffs' DSH payments for

25   FY 2013;

26        4.    An order from this Court directing Defendant to include inpatient days

27   attributable to dual-eligible patients who have exhausted their Medicare Part A

28   benefits in the Medicaid percentage and exclude Medicare Part A exhausted days

-23-

1  from the Medicare/SSI percentage when determining Plaintiffs' DSH payments for

2  FY 2013;

3       5.     An order from this Court requiring Defendant to pay Plaintiff interest

4  on the payments resulting from the Court's orders, pursuant to 42 U.S.C. §

5  1395oo(f)(2);

6       6.     An order from this Court awarding Plaintiff the costs and fees incurred

7  in this litigation;

8       7.     For other relief in law and/or equity as this Court may deem just and

9  proper.

10

11  Dated:  September 24, 2021     Respectfully submitted,

12       HERR PEDERSEN & BERGLUND LLP

13

14       By:  _/s/ *Rachele Berglund*_____

15         RACHELE BERGLUND

16       POWERS PYLES SUTTER & VERVILLE, PC

17         Ronald S. Connelly

18         Pro hac vice application forthcoming
       Attorneys for Plaintiff

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT**

# Exhibit A



DEPARTMENT OF HEALTH & HUMAN SERVICES

Provider Reimbursement Review Board
7500 Security Boulevard
Mail Stop: N2-19-25
Baltimore, MD 21244
410-786-2671

**Via Electronic Delivery**

Ronald Connelly, Esq.
Powers, Pyles, Sutter & Verville, PC
1501 M St., NW, 7th Fl.
Washington, DC 20005

Lorraine Frewert
Noridian Healthcare Solutions c/o
Cahaba Safeguard Administrators
P.O. Box 6782
Fargo, ND 58108-6782

RE:  ***Jurisdictional Determination, Request for Abeyance Ruling and Own Motion EJR***
Kaweah Delta Medical Center (Prov. No. 05-0057)
FYE 6/30/2013
Case No. 15-3002

Dear Mr. Connelly and Ms. Frewert:

The Provider Reimbursement Review Board ("PRRB" or "Board") has reviewed Kaweah Delta Health Care District's ("Kaweah" or "Provider") above-referenced appeal in response to the Medical Contractor's May 30, 2019 Jurisdictional Challenge, Kaweah's February 14, 2020 Request for Abeyance and the parties' responses to the Board's January 15, 2020 request for comments regarding a potential own motion expedited judicial review ("EJR").[1] As described below, the Board finds that it has jurisdiction to hear Kaweah's Dual Eligible Exhausted Medicare Part A Days issue, denies Kaweah's Request for Abeyance and grants EJR.

**Jurisdictional Challenge:**

On July 15, 2015, the Board received Kaweah's Request for Hearing ("RFH") in which Kaweah challenges the Medicare Contractor's treatment of certain Medicare days within Kaweah's disproportionate patient percentage ("DPP") for the fiscal year ("FY") ending June 30, 2013. Kaweah included the following issue within its RFH stating in full:

> The following issues are in dispute: . . . .
>
> **Audit Adjustment 68**
> The eligible days paid by the Medi-Cal (Medicaid) program have been ***reduced by 320 days***. *This number relates to patients with prior Medicare coverage* whose benefits have been exhausted or Medicare Patients with only Part B coverage. ***These days*** are proper eligible days and *should be included* in the Medi-Cal

---

[1] Under 42 C.F.R. § 405.1842(c), the Board is required to issue written notice to the parties in which the Board identifies the issue under consideration for EJR and specifies a reasonable period of time for the parties to respond in writing.

Jurisdictional Determination and Own Motion EJR for Case No. 15-3002
Kaweah Delta Health Care District
Page 2

> (Medicaid) Eligible Days total used in the Medicare
> [Disproportionate Share Hospital ("DSH")] calculation.[2]

Within its Final Position Paper, Kaweah refined its issue statement as follows:

> Whether inpatient days attributable to dual-eligible patients who
> have exhausted their Medicare Part A benefits should be excluded
> from the Medicare/SSI fraction and included in the Medicaid
> fraction when determining Kaweah['s] operating and capital DSH
> payments.[3]

The Medicare Contractor filed a May 30, 2019 Jurisdictional Challenge in which the Contractor states the following:

> The MAC is challenging jurisdiction of a segment of [Exhausted
> Part A Dual Eligible Days issue]. The Provider has attempted to
> add inclusion of Medicare Part A exhausted days in the SSI ratio
> through the submission of Provider's [FPP]. It is the MAC's
> position that the inclusion of Medicare Part A exhausted days in
> the SSI ratio does not meet the jurisdictional requirements as this
> segment of the issue was not addressed in the [RFH], nor was it
> added on a timely basis.[4]
> . . .
>
> The Provider specifically addressed the Medicaid ratio in the DSH
> calculation. The inclusion of the days at issue in the SSI Ratio was
> not specifically discussed in the Provider's [RFH].[5]

The Medicare Contractor supports its argument by pointing to the issue "specificity" language contained in the relevant regulation and pertinent Board Rules.[6] Specifically, the Contractor states that "[t]he PRRB expanded upon this regulatory requirement of 'a specific identification of the intermediary's or Secretary's determination under appeal' when it published *Rule 8* . . . Rule 8 continues to require that each component be specifically identified . . ."[7] The Contractor argues that "the PRRB Rules require that each contested component be appealed as a separate issue and described as narrowly as possible."[8]

---

[2] RFH at 1.
[3] Provider's Final Position Paper at 1.
[4] Jurisdictional Challenge at 2.
[5] *Id.* At 3.
[6] *Id.*
[7] *Id.*
[8] *Id.*

Jurisdictional Determination and Own Motion EJR for Case No. 15-3002
Kaweah Delta Health Care District
Page 3

In response, and in support of its issue statement, Kaweah argues that "the two DSH fractions are merely aspects of the same issue:  the proper treatment of exhausted days."[9]  Kaweah points out that its issue statement complied with the Board Rules in effect when it filed its appeal.[10]  Kaweah states that the July 1, 2015 Board Rules—not the ones cited by the Medicare Contractor[11]—require providers to "specifically identify the items in dispute" then appeal each contested component "as a separate issue[,] described as narrowly as possible . . ."[12]  Kaweah points out, however, that:

> Like the 2015 rules, the current Rule 8 states that each component "must be appealed separately and provides specific examples for DSH . . . The DSH examples do not distinguish between the Medicare/SSI fraction and the Medicaid fraction:  "common examples include:  dual eligible Medicare Part A/Medicaid, dual eligible Medicare Part C/Medicaid, SSI data matching, state/program specific general assistance days (program/waiver specific), and observation bed days."[13]

After reviewing the pertinent authorities and the parties' arguments, the Board finds that it has jurisdiction to hear Kaweah's Dual Eligible Exhausted Medicare Part A Days issue as set out within Kaweah's RFH – the 320 dual eligible exhausted Medicare days excluded from Kaweah's Medicaid fraction.  This was the adjustment and issue appealed.

In addition, the Board notes that, while the Medicare Contractor filed a May 30, 2019 Jurisdictional Challenge, the parties subsequently submitted joint stipulations on *June 24, 2019*, less than a month later, in which the Medicare Contractor stipulates that Kaweah's dual eligible exhausted Medicare Part A patient days issue includes both the Medicare and Medicaid fraction components:  "The MAC excluded exhausted days from the numerator of the Medicaid fraction and include exhausted days in the Medicare/SSI fraction when calculating the Provider's Medicare DSH payment.[14]  This was done pursuant to the instructions in 42 C.F.R. § 412.106(b) describing specifically what days are counted in the SSI fraction and what days are counted in the Medicaid fraction for purposes of a provider's DSH adjustment calculation.  Accordingly, the Board finds that, due to the instructions contained in 42 C.F.R. § 412.106(b), the appeal of the 320 days at issue includes both an SSI fraction component and a Medicaid fraction component, *i.e.*, the Provider desires to exclude the 320 days at issue from the SSI fraction so that they can then be included in the Medicaid fraction.

---

[9] Provider's Opposition to the MAC's Jurisdictional Objection at 1.
[10] The Board received Provider's appeal on July 15, 2015.
[11] Provider states that "[t]he MAC cites the current [Board] rules, which were not effective until August 29, 2018, more than three years after the Provider filed its appeal…" Provider's Opposition to the MAC's Jurisdictional Objection at 4.
[12] Provider's Opposition to the MAC's Jurisdictional Objection at 4.
[13] Provider's Opposition to the MAC's Jurisdictional Objection at 4, quoting Board Rule 8.1.A (2018).
[14] June 24, 2019 Joint Stipulations at 1.

Jurisdictional Determination and Own Motion EJR for Case No. 15-3002
Kaweah Delta Health Care District
Page 4

**Request for Abeyance:**

On February 14, 2020, the Board received Kaweah's Request for Abeyance ("Request"). Within its Request, Kaweah asks that the Board "hold the . . . appeal in abeyance until the Ninth Circuit Court of Appeals issues a decision in *Empire Health Foundation v. Azar*, No. 18-35845 (9th Cir. Appeal docketed Oct. 12, 2018)."[15]  Kaweah explains that "the issue of exhausted days is now pending before the Ninth Circuit in *Empire*[,] [and the Court] will likely issue a decision in the next few months."[16]  Kaweah argues that it "is located within the Ninth Circuit, and the court's decision in *Empire* . . . should govern this appeal."[17]

The Board notes that on May 5, 2020, the Ninth Circuit issued its *Empire* decision thus rendering Kaweah's Request, as stated, moot. The *Empire* decision is discussed in detail below. After considering the Request, the Board hereby denies the Request.

**Board Own Motion EJR:**

    *A. Adjustment for Medicare DSH*

Part A of the Medicare Act covers "inpatient hospital services." Since 1983, the Medicare program has paid most hospitals for the operating costs of inpatient hospital services under the inpatient prospective payment system ("IPPS").[18]  Under IPPS, Medicare pays predetermined, standardized amounts per discharge, subject to certain payment adjustments.[19]

The statutory provisions governing IPPS contain a number of provisions that adjust reimbursement based on hospital-specific factors.[20]  These cases involve the hospital-specific DSH adjustment, which requires the Secretary to provide increased IPPS payments to hospitals that serve a significantly disproportionate number of low-income patients.[21]

A hospital may qualify for a DSH adjustment based on its disproportionate patient percentage ("DPP").[22]  As a proxy for utilization by low-income patients, the DPP determines a hospital's qualification as a DSH, and it also determines the amount of the DSH payment to a qualifying hospital.[23]  The DPP is defined as the sum of two fractions expressed as percentages.[24]  Those two fractions are referred to as the "Medicare/SSI" fraction and the "Medicaid" fraction. Both of these fractions consider whether a patient was "entitled to benefits under part A."

---

[15] Request at 1.
[16] *Id*. at 2.
[17] *Id*.
[18] *See* 42 U.S.C. § 1395ww(d)(l)-(5); 42 C.F.R. Part 412.
[19] *Id.*
[20] *See* 42 U.S.C. § 1395ww(d)(5).
[21] *See* 42 U.S.C. § 1395ww(d)(5)(F)(i)(I); 42 C.F.R. § 412.106.
[22] *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(i)(I) and (d)(5)(F)(v); 42 C.F.R. § 412.l06(c)(l).
[23] *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(iv) and (vii)-(xiii); 42 C.F.R. § 412.106(d).
[24] *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi).

Jurisdictional Determination and Own Motion EJR for Case No. 15-3002
Kaweah Delta Health Care District
Page 5

The statute, 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I), defines the Medicare/SSI fraction as:

> [T]he fraction (expressed as a percentage), the numerator of which is
> the number of such hospital's patient days for such period which
> were made up of patients who (for such days) were *entitled to
> benefits under part A* of this subchapter and were entitled to
> supplemental security income benefits (excluding any State
> supplementation) under subchapter XVI of this chapter, and the
> denominator of which is the number of such hospital's patient days
> for such fiscal year which were made up of patients who (for such
> days) were *entitled to benefits under part A* of this subchapter . . . .[25]

The Medicare/SSI fraction is computed annually by the Centers for Medicare & Medicaid Services
("CMS"), and the Medicare contractors use CMS' calculation to compute a hospital's DSH payment
adjustment.[26]

The statute, 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II), defines the Medicaid fraction as:

> [T]he fraction (expressed as a percentage), the numerator of which
> is the number of the hospital's patient days for such period which
> consist of patients who (for such days) were eligible for medical
> assistance under a State plan approved under subchapter XIX [the
> Medicaid program], but who were *not entitled to benefits under
> part A of this subchapter,* and the denominator of which is the total
> number of the hospital's patient days for such period.[27]

The Medicare contractor determines the number of the hospital's patient days of service for which patients
were eligible for Medicaid but not entitled to Medicare Part A, and divides that number by the total
number of patient days in the same period.[28]

### B. Accounting of Dual Eligible Days in the Medicare DSH Adjustment Calculation

In the preamble to FY 2004 IPPS proposed rule published on May 19, 2003, the Secretary,
reiterated that the DSH patient percentage is equal to the sum of the percentage of Medicare
inpatient days attributable to patients entitled to both Medicare Part A and SSI benefits, and the
percentage of total inpatient days attributable to patients eligible for Medicaid but not entitled to
Medicare Part A benefits.[29]  The Secretary explained that, if a patient is a Medicare beneficiary
who is also eligible for Medicaid, the patient is considered dual eligible.  Dual eligible patient
days are included in the Medicare fraction of the DSH patient percentage, but not the Medicaid

---

[25] (Emphasis added.)
[26] 42 C.F.R. § 412.106(b)(2)-(3).
[27] (Emphasis added.)
[28] 42 C.F.R. § 412.106(b)(4).
[29] 68 Fed. Reg. 27154, 27207 (May 19, 2003).

Jurisdictional  Determination  and Own Motion  EJR for Case No. 15-3002
Kaweah Delta Health Care District
Page 6

fraction.  The Secretary maintained  that this treatment was consistent  with the language  of 42
U.S.C. § 1395ww(d)(5)(F)(vi)(II),  which specified that patients entitled  to benefits under Part A
are *excluded* from the Medicaid  fraction.[30]

At the time the proposed rule was published,  the policy above applied  even after the patient's
Medicare coverage was exhausted. More specifically,  under this policy,  "if a dual-eligible  patient
was admitted  without  any Medicare  Part A coverage remaining,  or the patient exhausted
Medicare Part A coverage while  an inpatient,  his or her patient days were counted in the
Medicare fraction before and after Medicare coverage is exhausted."[31]  The Secretary maintained
that this was consistent  with the inclusion  of Medicaid  patient days even after the patient's
Medicaid coverage is exhausted.[32]  The Secretary then summarized  its policy by stating that "our
current policy  regarding  dual-eligible  patient days is that they are counted in the Medicare
fraction and excluded from the Medicaid  fraction, even if the patient's  Medicare Part A coverage
has been exhausted."[33]

The Secretary stated that he believed  that the current policy  regarding dual eligible  patients,
counting them in the Medicare fraction and excluding  them from the Medicaid  fraction, even if
the patient's  Medicare Part A coverage had been exhausted, was consistent  with 42 U.S.C
§ 1395ww(d)(5)(F)(vi)(II).[34]   Notwithstanding,  the Secretary recognized  that there were other
plausible  interpretations  and acknowledged,  on a practical level,  it was often difficult  for
Medicare contractor's[35]  to differentiate  the days for dual eligible  patients who Part A coverage
had been exhausted.  The Secretary explained  that the degree of difficulty  in differentiating  the
days varied from State to State depending  on the manner in which  States identify  dual eligible
beneficiaries  in their list of Medicaid  patient days provided to hospitals  or required the MACs or
hospitals  undertake the identification.  Underlying  the Secretary's concern was the fact that there
were hospitals  located in States in which  the beneficiaries  exhausted the Medicare Part A
coverage and no Part A bill  may be submitted  for the patients.  Consequently,  the relevant MACs
had no data by which  to verify any adjustment  for these cases in the Medicaid  data furnished by
the hospital.[36]

In light  of these concerns and to facilitate  consistent  handling  of these days across all hospitals,
the Secretary proposed in the FY 2004 IPPS proposed rule to change this policy and begin to
count the patient days of dual-eligible  Medicare beneficiaries  whose Medicare coverage was
expired in the Medicaid  fraction of the DSH patient percentage.[37]  Specifically,  the Secretary
proposed that the days of patients who have exhausted their Medicare Part A coverage would  no
longer be included  in the Medicare fraction and, instead, would  be included  in the Medicaid

---

[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* at 27207-27208.
[34] *Id.* at 27207-08.
[35] MACs were formerly known as fiscal intermediaries or intermediaries.
[36] 68 Fed. Reg. at 27208.
[37] *Id.*

Jurisdictional Determination and Own Motion EJR for Case No. 15-3002
Kaweah Delta Health Care District
Page 7

fraction of the DSH calculation.[38]  The Secretary noted that not all SSI recipients are Medicaid eligible and, therefore, it would not be automatic that the patient days of SSI recipients would be counted in the Medicaid fraction when their Part A coverage ended. [39] Under the proposed change, before a hospital could count patient days attributable to dual eligible beneficiaries in the Medicaid fraction, the hospital would be required to submit documentation to the MAC that justified including the days in the Medicaid fraction after Medicare Part A benefits have been exhausted.[40]

When the Secretary published the FY 2004 IPPS final rule on August 1, 2003, the Secretary did not adopt and finalize the proposed policy changes regarding dual eligible days.[41] Rather, he stated that "[d]ue to the number and nature of the comments we received on our proposed policies, we are addressing the public comments in a separate document."[42]

On May 18, 2004, the Secretary provided an update. Specifically, in the preamble to the FY 2005 IPPS proposed rule published on that date, the Secretary stated that the Secretary planned to address the proposed policy changes regarding dual eligible days in the forthcoming FY 2005 IPPS final rule.[43]

In the preamble to the FY 2005 IPPS final rule published on August 11, 2004, the Secretary addressed the previously proposed policy changes and stated:

> It has come to our attention that we inadvertently misstated our *current* policy with regard to the treatment of certain inpatient days for dual-eligibles in the proposed rule of May 19, 2003 . . . . In that proposed rule, we indicated that a dual-eligible beneficiary is included in the Medicare fraction even after the patient's Medicare Part A hospital coverage is exhausted. That is, we stated that if a dual-eligible patient is admitted without any Medicare Part A hospital coverage remaining, or the patient exhausts Medicare Part A hospital coverage while an inpatient, the non-covered patient days are counted in the Medicare fraction. This statement was not accurate. *Our policy has been* that only *covered* patient days are included in the Medicare fraction (§ 412.106(b)(2)(i)).  A notice to this effect was posted on CMS's Web site (*http://www.cms.hhs.gov/providers/hipps/dual.asp*) on July 9, 2004.[44]

**** 

---

[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] 68 Fed. Reg. 45346, 45421 (Aug. 1, 2003).
[42] *Id.*
[43] 68 Fed. Reg. 28196, 28286 (May 18, 2004).
[44] 69 Fed. Reg. 48916, 49098 (Aug. 11, 2004).

Jurisdictional Determination and Own Motion EJR for Case No. 15-3002
Kaweah Delta Health Care District
Page 8

> . . . [W]e have decided **not** to finalize our proposal stated in the
> May 19, 2003 proposed rule to include dual-eligible beneficiaries
> who have exhausted their Part A hospital coverage in the Medicaid
> fraction. Instead, *we are adopting a policy to include the days*
> *associated with dual-eligible beneficiaries in the Medicare*
> *fraction, whether or not the beneficiary has exhausted Medicare*
> *Part A hospital coverage.* If the patient is entitled to Medicare Part
> A and SSI, the patient days will be included in both the numerator
> and denominator of the Medicare fraction. This policy will be
> effective for discharges occurring on or after October 1, 2004. *We*
> *are revising our regulations at § 412.106(b)(2)(i) to include the*
> *days associated with dual eligible beneficiaries **in the Medicare***
> ***fraction** of the DSH calculation.*[45]

Accordingly, the Secretary adopted a new policy to "include the days associated with dual-
eligible beneficiaries in the Medicare fraction, whether or not the beneficiary has exhausted
Medicare Part A hospital coverage."[46]   In order to effectuate this policy change, the FY 2005
IPPS final rule revised 42 C.F.R. § 412.106(b)(2)(i) by deleting the word "covered."[47]   Prior to
this revision, § 412.106(b)(2) (2004) had stated:

> (2) First computation: Federal fiscal year. For each month of the
> Federal fiscal year in which the hospital's cost reporting period
> begins, CMS—
>
> (i)   *Determines the number of **covered** patient days that*—
>
> (A) Are associated with discharges occurring during each month;
> and
>
> (B) Are furnished to patients who during that month were entitled to
> both Medicare Part A and SSI, excluding those patients who
> received only State supplementation . . .

As a result of the revision made by the FY 2005 IPPS final rule, § 412.105(b)(2)(i) (2005)
now states:

> (2) First computation: Federal fiscal year. For each month of the Federal fiscal
> year in which the hospital's cost reporting period begins, CMS—
>
> (i)   *determines the number of patient days that--*

---

[45] *Id.* at 49099 (emphasis added).
[46] *Id.*
[47] *See id.* at 49099, 49246.

Jurisdictional  Determination  and Own Motion  EJR for Case No. 15-3002
Kaweah Delta Health Care District
Page 9

      (A) Are associated with discharges  occurring  during  each month;  and

      (B) Are furnished  to patients  who during  that month  were entitled  to both
          Medicare  Part A and SSI, excluding  those patients  who received only  State
          supplementation  . . .

Again, the effect of this change was to adopt "a policy  to include  the days associated with dual-
eligible  beneficiaries  in the Medicare  fraction,  whether  or not the beneficiary  has exhausted
Medicare  Part A hospital  coverage."[48]

The Board notes that a number of courts have reviewed and upheld the procedural validity  of the
2005 Rule.  In the first case, *Stringfellow Mem'l Hosp. v. Azar* ("*Stringfellow*"),[49] the U.S.
District  Court for the District of Columbia  ("D.C. District Court") considered whether the 2005
Rule violated the Administrative  Procedure Act ("APA") because the rule is procedurally
defective and arbitrary  and capricious.[50]   The D.C. District  Court concluded that the Secretary
promulgated  the 2005 Rule with adequate notice and comment procedures and that the rule is not
procedurally  defective.[51]   Further, the D.C. District  Court found that the 2005 Rule was
procedurally  sound and the product of reasoned decision  making.[52]   The *Stringfellow* decision
was appealed to the D.C. Circuit Court of Appeals; however, the D.C. Circuit later dismissed it.[53]
Accordingly,  the D.C. District  Court's decision  to uphold  the FY 2005 change to 42. C.F.R.
§412.106(b)(2)(i)  was not otherwise altered.

In the second case, *Catholic Health Initiatives Iowa Corp. v. Sebelius* ("*Catholic Health*")[54], the
D.C. Circuit reviewed the agency's interpretation  of the phrase "entitled  to benefits" as used in
42 U.S.C. §1395ww(d)(5)(F)(vi)  and, consistent with its 2011 decision  in *Northeast Hospital
Corp v. Sebelius*,[55] found that the Secretary's interpretation  that an individual  is "entitled  to
benefits  under Medicare  when he meets the basic statutory criteria  for Medicare  Part A was a
reasonable and permissible  interpretation  of that phrase.[56]

In the third case, *Empire Health Found. v. Price* ("*Empire*"),[57] the U.S. District  Court for the
Eastern District  of Washington ("Washington  District Court") reviewed the question of "the
validity"  of the Secretary's FY 2005 IPPS final rule with regard to the Secretary's interpretation
of the phrase "entitled  to benefits under [Medicare  Part A] in 42 U.S.C. § 1395ww."[58]   In
*Empire*, the hospital  had alleged that the FY 2005 IPPS final rule amending 42 C.F.R.

---

[48] *Id.*
[49] 317 F. Supp. 3d 168 (D.D.C. 2018).
[50] *Id.* at 172.
[51] *Id.* at 190.
[52] *Id.* at 194.
[53] *See* 2019 WL 668282.
[54] 718 F.3d 914 (2013).
[55] 657 F.3d 1 (D.C. Cir. 2011).
[56] 718 F.3d at 920.
[57] 334 F. Supp. 3d 1134 (E.D. Wash. 2018)
[58] *Id.* at 1141.

Jurisdictional Determination and Own Motion EJR for Case No. 15-3002
Kaweah Delta Health Care District
Page 10

§ 412.106(b)(2) was substantively and procedurally invalid.[59]  The Washington District Court noted that the Secretary misstated the then-existing policy until approximately three days before the close of the comment period for the FY 2005 IPPS proposed rule and that the inaccuracy of the policy statement necessarily distorted the context of the proposed rule.  The Washington District Court determined that, without an accurate contest in which to view the Secretary's proposed rule, interested parties cannot know what to expect and have no basis on which to make comments. Further, the Washington District Court pointed out that interested parties could not have reasonably anticipated the Secretary's rulemaking contained a misstatement.  Consequently, the Washington District Court found that the Secretary's notice failed to satisfy the procedural rulemaking requirements of the APA[60] and that the regulation is procedurally invalid.[61]

The U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") reviewed the Washington District Court's decision in *Empire*[62] and reversed that Court's finding that the revision made by the FY 2005 IPPS Final Rule to 42 C.F.R. § 412.106(b)(2)(i) failed to satisfy the procedural rulemaking requirements of the APA.[63]  Rather, the Ninth Circuit found that this revision "was a logical outgrowth of the notice and the comments received" and that it "met the APA's procedural requirements."[64]  However, the Ninth Circuit then reviewed substantive validity of this revision and determined that it was bound by the previous Ninth Circuit's 1996 decision in *Legacy Emanuel Hospital and Health Center v. Shalala* ("*Legacy Emanuel*")[65] wherein the Ninth Circuit considered the meaning of the words "entitled" and eligible in tandem as those words are used in the statutory description of the Medicaid fraction at 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).  Specifically, in *Legacy Emanuel*, the Ninth Circuit "interpreted the word 'entitled' to mean that a patient has an 'absolute right . . . to payment'" and "the word 'eligible' to mean that a patient simply meets the Medicaid statutory criteria."[66]  In *Empire*, the Ninth Circuit noted that, in the FY 2005 IPPS Final Rule, the Secretary adopted a different meaning to "entitled" that more closely aligned with the meaning of the word "eligible."[67]  According, in *Empire*, the Ninth Circuit held that "[b]ecause we have already construed the unambiguous meaning of 'entitled' to [Medicare]" in 42 U.S.C. § 1395(d)(5)(F)(vi), we hold that the [FY 2005 IPPS Final Rule's] contrary interpretation of that phrase is substantively invalid pursuant to APA."[68] Accordingly, the Ninth Circuit to the following actions to implement its holding:

---

[59] *Id.*
[60] *Id. at 1162.*
[61] *Id. at 1163*
[62] 958 F.3d 873 (9th Cir. 2020), *reh'g en banc denied* (9th Cir. Oct. 20, 2020).  The Secretary filed a Writ of Certiorari with the U.S. Supreme Court asking it to review the Ninth Circuit's *Empire* decision on March 19, 2021 (*Becerra v. Empire Health Services (No 20-1312)*).  The Provider filed a Cross-Petition for a Writ of Certiorari on April 22, 2021 (*Empire Health Services v. Becerra* (No. 20-1486)).
[63] *Id.* at 884.
[64] *Id.* at 884.
[65] 97 F.3d 1261, 1265-66 (9th Cir. 1996).
[66] 958 F.3d at 885 (citing and quoting *Legacy Emanuel*).
[67] *Id.* at 886.
[68] *Id.*

Jurisdictional Determination and Own Motion EJR for Case No. 15-3002
Kaweah Delta Health Care District
Page 11

1. It affirmed the Washington District Court's order vacating the FY 2005 IPPS Final Rule as it relates to the deletion of the word "covered" from 42 C.F.R. § 412.106(b)(2)(i); and

2. It "reinstat[ed] the version of 42 C.F.R. § 412.106(b)(2)(i) which embraced only 'covered' patient days" (*i.e.*, reinstated the rule previously in force).

On July 2, 2021, the U.S. Supreme Court granted the Secretary's petition to review the 9th Circuit's decision in *Empire*. As of the date of this notice, the Secretary's position with respect to the validity of the regulation at 42 C.F.R. § 412.106(b)(2)(i) (as modified by the FY 2005 IPPS Final Rule) has not changed.

**Kaweah's Dual Eligible Exhausted Medicare Part A Days Issue**

Kaweah is challenging CMS' treatment, within the DPP, of patient days for patients who were dually eligible for Medicare and Medicaid but whose Medicare coverage was exhausted for the benefit period included in the DPP calculation. Specifically, Kaweah argues that

> CMS should have included exhausted Medicare Part A days for dual eligible patients in the Medicaid percentage. Instead, CMS improperly included exhausted Medicare Part A days in the Medicare/SSI percentage.
>
> CMS's treatment of exhausted days is contrary to the Medicare statute. The Medicare statute determines treatment of patient days in the [Disproportionate Share Hospital ("DSH") payment] calculation based on the patient's entitlement to Medicare.
> . . .
> The Provider is located within the Ninth Circuit Court of Appeals . . . The Ninth Circuit has . . . held that the term "entitled" in the statutory description of the Medicare/SSI fraction unambiguously refers to payment by Medicare Part A. *Legacy Emanuel Hosp. v. Shalala*, 97 F.3d 1261 (9th Cir. 1996). Thus, because exhausted days are not paid by Medicare Part A, the patient is not entitled to Medicare Part A, and exhausted days may not be included in the Medicare/SSI fraction. Exhausted days for dual-eligible beneficiaries must be included in the numerator of the Medicaid fraction.[69]

Kaweah recognizes that CMS promulgated regulations at 42 C.F.R. § 412.106(b) that govern how the disputed exhausted days are counted in the DSH calculation. Kaweah also recognizes the relevance of the Fiscal Year 2005 Inpatient Prospective Payment System ("IPPS") Final Rule

---

[69] Provider's Final Position Paper at 5-6.

Jurisdictional Determination and Own Motion EJR for Case No. 15-3002
Kaweah Delta Health Care District
Page 12

that revised these regulations, as discussed *supra*.[70] Kaweah argues, however, that "CMS's [2005 revision to the] regulation removing the term 'covered' from the DSH regulation and excluding [*sic*] exhausted days from the Medicare/SSI fraction is invalid because CMS did not comply with rulemaking procedures mandated by the Administrative Procedure Act [("APA")][.]"[71] In support of this position, Kaweah references the 2018 decision of the Washington District Court for the Eastern District in *Empire*.[72]

Kaweah concedes that, subsequent to the Ninth Circuit's decision in *Legacy Emmanuel*, the federal D.C. courts concluded differently than the Ninth Circuit:

> The D.C. Circuit upheld the 2004 regulation as a permissible construction of the statute and affirmed CMS's exclusion of exhausted days from the Medicare/SSI fraction[;][73] a D.C. District Court upheld CMS's inclusion of exhausted days in the Medicare/SSI fraction as consistent with the statute[;][74][and another] D.C. District Court held that CMS complied with the APA when promulgating the 2004 regulation . . . removing "covered" from the DSH regulation[,] [and thus] upheld CMS's inclusion of exhausted days in the Medicare/SSI fraction.[75]

The Provider argues that it is located within the Ninth Circuit therefore the holdings in *Legacy Emanuel* and *Empire Health* are controlling in the instant appeal.

*Parties' Comments*

As required under 42 C.F.R. § 405.1842(c), the Board issued a January 15, 2020 Notice of Potential Own Motion EJR to the parties in which the Board requested that the parties provide comments regarding the Board's consideration of its potential grant of own motion EJR for Kaweah's Dual Eligible Exhausted Medicare Part A days issue.

The Medicare Contractor filed its comments on February 17, 2020. Specifically, the Contractor states that "[b]ecause the Board is bound by the very CMS regulation that the Provider is challenging, the [Medicare Contractor] believes the Board is without the authority to decide the legal question raised in this appeal and therefor considers the granting of EJR to be proper."[76]

Kaweah filed its written comments with the Board on February 14, 2020. Within its response, Kaweah argues that its Exhausted Part A Dual Eligible Days issue is within the Board's authority to decide because the regulation at issue does not "expressly mention" exhausted days and the

---

[70] 69 Fed. Reg. 48916, 49098-49099, 49246 (Aug. 11, 2004).
[71] Provider's Final Position Paper at 6.
[72] 334 F.Supp.3d 1134 (E.D. Wash. 2018).
[73] *Catholic Health* 718 F.3d 914, 920 (2013).
[74] *Allina Health System v. Sebelius*, 982 F.Supp.2d 1 (D.D.C. 2013).
[75] *Stringfellow Memorial Hospital v. Azar*, 317 F.Supp.3d 168 (D.D.C. 2018).
[76] February 17, 2020 Medicare Contractor EJR Comments at 2.

Jurisdictional  Determination  and  Own  Motion  EJR  for  Case  No.  15-3002
Kaweah  Delta  Health  Care  District
Page 13

Board need not invalidate  the regulation  but merely interpret  whether the term "entitled"
includes  or excludes  exhausted days.[77]

## Decision of the Board

Pursuant to 42 U.S.C. § 1395oo(f)(1)  and the regulations  at 42 C.F.R. § 405.1842(f)(1)  (2019),
the Board is required to grant an EJR request if it determines that:  (i) the Board has jurisdiction
to conduct a hearing on the specific matter at issue; and (ii) the Board lacks the authority  to
decide a specific  legal question relevant to the specific matter at issue because the legal question
is a challenge  either to the constitutionality  of a provision  of a statute or to the substantive  or
procedural  validity  of a regulation  or CMS Ruling.

Kaweah's timely  filed RFH represents that the amount in controversy for this issue exceeds the
$10,000  threshold necessary for an individual  appeal[78] and, based on the jurisdictional  analysis
*supra*, the Board finds that it has jurisdiction  to conduct a hearing regarding Kaweah's Dual
Eligible  Exhausted Medicare Part A Days issue.[79]  The Board notes that the estimated amount in
controversy is subject to recalculation  by the Medicare contractor upon final disposition  of this
issue.

Here, Kaweah appealed Audit Adjustment No. 68 and is challenging  whether CMS improperly
excluded  *320* exhausted Medicare Part A days for dual-eligible  patients in the Medicaid
percentage and improperly  included those exhausted Medicare Part A days in the Medicare/SSI
percentage when, in promulgating  the 2005 Rule, it changed the regulatory  text of 42 C.F.R.
§ 412.105(b)(2)(i).[80]  Although Kaweah argues that the 2005 Rule was *procedurally* deficient, the
Ninth Circuit,  the Sixth Circuit and the D.C. Circuit all found that the 2005 Rule was procedurally
valid, but the Ninth Circuit ultimately  vacated the 2005 Rule because it found the 2005 Rule to be
"substantively  invalid."[81]   Kaweah argues that, being within the Ninth Circuit, the Ninth Circuit's
case law is binding  in this appeal.  Such case law includes the Ninth Circuit's decision in *Legacy
Emanuel* in which the court "held that the term 'entitled'  in the statutory description of the
Medicare/SSI fraction unambiguously  refers to payment by Medicare Part A[,]"[82] and the recent
Ninth Circuit decision in *Empire* that specifically  vacated the 2005 Rule and reinstated the prior
version of the Rule "which embraced only 'covered' patient days."[83]

The relief sought by Kaweah, namely, that CMS' current policy incorrectly  includes  "the days
associated with dual-eligible  beneficiaries  in the Medicare fraction, whether or not the
beneficiary has exhausted Medicare Part A hospital coverage"[84] requires the Board to find that

---

[77] Provider's EJR Comments at 2.
[78] 42 C.F.R. § 405.1835(a).
[79] See 43 C.F.R. § 405.1842(1).
[80] Provider's Final Position Paper at 6.
[81] *Empire* at 7.  See detailed analysis *supra*.
[82] Provider Final Position Paper at 6-8.
[83] *Empire* at 1.
[84] Within the parties' June 24, 2019 Joint Stipulations, Kaweah stipulates that its dual eligible exhausted days is
is as follows:

Jurisdictional Determination and Own Motion EJR for Case No. 15-3002
Kaweah Delta Health Care District
Page 14

42 C.F.R. § 412.106(b)(2)(i), as revised by the 2005 Rule for the purpose of mandating the inclusion of non-covered days in the Medicare fraction, is not valid.[85] Although different federal circuits have come to different conclusions regarding the substantive validity of the 2005 Rule,[86] as of the date of this determination, the Secretary's position with respect to the validity of the regulation specifying where Medicare exhausted days must counted (as explained in and codified by the FY 2005 IPPS Final Rule[87]) has not changed and the regulation, as amended by the FY 2005 IPPS Final Rule, remains in effect. Under the regulatory mandates governing the scope of the Board's legal authority, the Board must comply with all the provisions of Title XVIII of the Act and regulations issued thereunder.[88] Thus, the Board finds that it is without the authority to grant the relief sought by Kaweah and that EJR is appropriate for this issue.

**Conclusion:**

The Board finds that:

1) It has jurisdiction over the matter for the subject year and the Provider is entitled to a hearing before the Board;

2) Based upon the Provider's assertions regarding the validity of 42 C.F.R. § 412.106(b)(2)(i), there are no findings of fact for resolution by the Board;

3) It is bound by the applicable existing Medicare law and regulation (42 C.F.R. § 405.1867); and

4) It is without the authority to decide the legal question of whether 42 C.F.R. § 412.106(b)(2)(i) is valid as it relates to the 320 Medicare exhausted days at issue.

Accordingly, the Board finds that the issue regarding the validity of 42 C.F.R. § 412.106(b)(2)(i) properly falls within the provisions of 42 U.S.C. § 1395oo(f)(1) and grants its own motion EJR for the issue and the subject year. The Provider has 60 days from the receipt of this decision to

---

Whether CMS improperly excluded exhausted Medicare Part A days for dual-eligible patients in the Medicaid percentage and improperly included exhausted Medicare Part A days in the Medicare/SSI percentage.

[85] Kaweah argues that "the Board does not have to invalidate the regulation . . . [but] only interpret the regulation to determine whether the term 'entitled' includes or excludes exhausted days." Provider's EJR Comments at 2. However, as for the Board to find for Kaweah's interpretation of the disputed issue, the Board must specifically find that the Secretary's policy and underlying reasoning set out in the preamble to the 2005 Rule is incorrect.
[86] See analysis *supra*.
[87] The Board disagrees with the Provider's counsel that the Board has discretion how to interpret the word "entitled" as used in 42 C.F.R. § 412.106(b). The preamble to the FY 2005 IPPS Final Rule is explicit in how the Secretary interpreted that word when she included it in the regulation and it is clear that the Secretary intended it to be binding in order to have a uniform application of that regulation. *See also* CMS Ruling 1498-R. Indeed, the Secretary's agency, CMS, is tasked with applying that regulation when calculating the SSI fractions for all hospitals.
[88] 42 C.F.R. § 405.1867 (2019).

Jurisdictional Determination and Own Motion EJR for Case No. 15-3002
Kaweah Delta Health Care District
Page 15

institute the appropriate action for judicial review. As this is _not_ the only issue under dispute, this case remains open.

Board Members Participating:

For the Board:

Clayton J. Nix, Esq.
Gregory H. Ziegler, CPA
Robert A. Evarts, Esq.
Susan A. Turner, Esq.

7/28/2021

X Clayton J. Nix
_____
Clayton J. Nix, Esq.
Chair
Signed by: PIV

cc:    Wilson Leong, Federal Specialized Services